UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| **OLIVIA WRIGHT,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | Civil Action Number |
| ) | **4:20-cv-01136-AKK** |
| ) | |
| **KILOLO KIJAKAZI, Acting** ) | |
| **Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |

## **MEMORANDUM OPINION**

Olivia Wright brings this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) of the Social Security Act seeking review of the final adverse decision of the Commissioner of Social Security. Doc. 1. The court finds that the Administrative Law Judge's decision, which has become that of the Commissioner, is supported by substantial evidence. The court therefore affirms the decision denying benefits.

**I.**

Wright applied for disability insurance benefits and supplemental security income in June 2018 based on arthritis, back problems, stenosis in her neck and lower back, a bulging disc, degenerative disc disease, fibromyalgia, and neuropathy. R. 311-12, 389-98. Wright's claim was denied, R. 309-17, and she appealed and requested a hearing before an administrative law judge, R. 322-24. After the hearing,

1

the ALJ issued a decision denying benefits. R. 13-31. Wright appealed this decision, R. 386-88, but the appeals council denied her request for review, rendering the ALJ's decision the final decision of the Commissioner, R. 1-4. Wright then filed this petition for judicial review. Doc. 1.

## II.

This court's review is limited to determining whether the record contains substantial evidence to sustain the ALJ's decision and whether the ALJ applied the correct legal standards. 42 U.S.C. § 405(g); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The Commissioner's conclusions of law receive *de novo* review. *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). But under 42 U.S.C. §§ 405(g) and 1383(c), the Commissioner's "factual findings are conclusive if supported by 'substantial evidence,'" so the court cannot reconsider the facts, reevaluate the evidence, or substitute its judgment for the Commissioner's. *Id.* Instead, the court must review the final decision in its entirety to determine whether the factual determinations are "reasonable and supported by substantial evidence." *Id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence refers to "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id*. As the Supreme Court has emphasized, "the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). Rather, substantial evidence falls

somewhere between a "scintilla" and a "preponderance of evidence." *Martin*, 894 F.2d at 1529.  If substantial evidence supports the Commissioner's factual findings, then the court must affirm, even if the evidence preponderates against those findings.  *See id.*  However, this limited scope of judicial review "does not yield automatic affirmance," *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988), and reviewing courts are not to act as mere "automatons[,]" *Bloodsworth*, 703 F.2d at 1239 (internal quotations omitted).

### III.

To qualify for supplemental social security benefits under the Social Security Act, a claimant must show that she "is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A).  A claimant's physical or mental impairments only qualify her for disability benefits if they "are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 1382c(a)(3)(B).

In evaluating eligibility for supplemental social security under the Act, the ALJ must conduct a five-step analysis:

> At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. At the second step, the ALJ must determine whether the impairment or combination of impairments for which the claimant allegedly suffers is "severe." At the third step, the ALJ must decide whether the claimant's severe impairments meet or medically equal a listed impairment. Where . . . the ALJ finds that the claimant's severe impairments do not meet or equal a listed impairment, the ALJ must then determine, at step four, whether she has the residual functional capacity ("RFC") to perform her past relevant work. . . . Finally, if the claimant cannot perform her past relevant work, the ALJ must then determine, at step five, whether the claimant's RFC permits her to perform other work that exists in the national economy.

*Adams v. Comm'r, Soc. Sec. Admin.,* 586 F. App'x 531, 533 (11th Cir. 2014) (internal citations omitted); *see also* 20 C.F.R. § 416.920(a). "The residual functional capacity is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite [her] impairments," *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *see also* 20 C.F.R. § 416.920(e), and at step five, the ALJ must consider the claimant's RFC, along with her age, education, and work experience, to determine if there are a significant number of jobs in the national economy that the claimant could perform, 20 C.F.R. § 416.920(g); *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). If the ALJ determines that the claimant, despite any impairments, could adjust to other work in the national economy, the ALJ will issue a finding of not disabled. 20 C.F.R. § 416.920(g).

**IV.**

In performing the five-step sequential analysis, the ALJ determined at step one that Wright had not engaged in substantial gainful activity since the date of her application. R. 18. At step two, the ALJ found that Wright suffered from the following severe impairments: degenerative disc disease, fibromyalgia, obesity, depression, and anxiety. R. 19. The ALJ then found at step three that Wright's severe impairments, considered both singly and in combination, did not meet or medically equal a listed impairment. R. 19-21. In making this finding, the ALJ determined that Wright's allegation of chronic pain related to her fibromyalgia and other conditions was not supported by objective medical evidence and was not consistent with other evidence in the record. R. 19-20.

The ALJ also determined that Wright's depression and anxiety did not result in one extreme limitation or two marked limitations in the four broad areas of functioning, and therefore did not meet the listed criteria for a "severe" mental impairment. R. 20-21. Specifically, the ALJ found that Wright only had a moderate limitation in the following areas: understanding, remembering, or applying information; interacting with others; ability to concentrate, persist, or maintain pace; and ability to adapt or manage herself. R. 20-21.

At step four, the ALJ determined that Wright had the residual functional capacity to perform sedentary work "except occasional pushing or pulling with

lower extremities; no climbing ladders or scaffolds; occasional climbing ramps and stairs; [occasional] balancing, stooping; no kneeling, crouching, crawling; occasional exposure to extreme heat and cold; vibration; no exposure to dangerous machinery, unprotected heights; no work requiring walking on uneven or slippery surfaces." R. 21. The ALJ also found that Wright could, during a regularly scheduled workday, "[u]nderstand and remember short and simple instructions, . . . [d]o simple, routine, repetitive tasks, . . . [h]ave no more than occasional contact with the general public, . . . [and d]eal with changes in work place, if introduced occasionally and gradually, and are well-explained." R. 21.

After determining that Wright could not perform her past relevant work, the ALJ moved to step five and, based on testimony from a vocational expert, determined that "considering [Wright's] age, education, work experience, and residual functional capacity[, Wright] is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." R. 27. The ALJ thus issued a finding of "not disabled" and denied Wright's application for benefits. R. 27.

## V.

Wright contends that the ALJ (1) failed to accord proper weight to Wright's testimony about the pain caused by her fibromyalgia and degenerative disc disease,

and (2) failed to pose a proper hypothetical to the vocational expert. *See* doc. 18. The court addresses each argument in turn.

## A.

At her hearing, Wright testified that she was unable to work due to various symptoms stemming from her fibromyalgia, arthritis, degenerative disc disease, neuropathy, and back pain. R. 22. The ALJ determined that although Wright's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms," her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." R. 22.

Wright alleges that substantial evidence does not support the ALJ's decision to discount Wright's subjective pain testimony, arguing that her "degenerative disk (sic) disease and fibromyalgia could reasonably be expected to cause the pain that she describes." Doc. 18 at 12-15. In particular, Wright claims that since fibromyalgia-related pain is difficult to quantify through objective clinical tests, "[t]he ALJ cannot discredit [Wright's] pain from fibromyalgia by simply talking about her test results." *Id*.

The ALJ, however, did not rely exclusively on test results. In determining that Wright's testimony about the limiting effects of her pain was unsupported, the ALJ noted (1) Dr. Zenko Hrynkiw's opinion, after treating Wright for back pain, that she

7

could return to work at full duty, (2) Dr. Kun Chen's report that Wright's hobbies included fishing and that her low back pain was stable, (3) treatment records showing that Wright demonstrated a normal range of motion in all extremities, (4) Wright's self-reported daily activities, including taking care of her animals, preparing meals, and completing household chores, and (5) Wright's mother's report that Wright washed dishes, used a riding lawn mower to cut grass, and did not have any significant problems with personal care. R. 22-25.

Where, as here, a claim is based in part on a claimant's pain testimony, if the ALJ "does not fully credit the claimant's subjective pain testimony, the ALJ's decision must articulate his or her reasons and those reasons must be supported by substantial evidence." Doc. 18 at 13 (citing *Hale v. Bowen*, 831 F.2d 1007, 1012 (11th Cir. 1987)). The ALJ met this burden in Wright's case, and the evidence cited by the ALJ provides substantial support for his finding that, despite Wright's subjective complaints, she was "not as limited as alleged." R. 25. Therefore, the ALJ did not err by not fully crediting Wright's testimony about her pain and resulting limitations. *See Peters v. Astrue*, 232 F. App'x 866, 872 (11th Cir. 2007) (affirming ALJ's decision to discredit claimant's testimony about fibromyalgia-related pain where ALJ provided detailed factual basis for his credibility determination); *Moore v. Barnhart*, 405 F.3d 1208, 1211-12 (11th Cir. 2005) (same).

**B.**

Wright's second contention is related to her first. Because her pain testimony purportedly "supports an RFC restriction with no more than occasional pushing and pulling with her upper extremities," Wright argues, the ALJ erred by relying on the vocational expert's testimony about a hypothetical claimant without this limitation. Doc. 18 at 15-16. As discussed above, however, the ALJ's decision to not fully credit Wright's pain testimony was supported by substantial evidence, and an ALJ is "not required to include findings in the hypothetical that the ALJ had properly rejected as unsupported." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004). Therefore, the ALJ did not err by posing a hypothetical to the vocational expert that failed to include an upper-extremity limitation.[1]

**VI.**

In conclusion, substantial evidence supports the ALJ's decision to give less-than-full weight to Wright's subjective testimony about her pain and resulting limitations, and the ALJ's reliance on the vocational expert's testimony is thus also supported by substantial evidence. The Commissioner's final decision is therefore due to be affirmed in a separate order in accordance with this opinion.

---

[1] Wright notes that when the ALJ posed a hypothetical that included this specific limitation, the vocational expert testified that there would be no jobs in the national economy that the hypothetical claimant could perform. Doc. 18 at 15-16. But given that the ALJ's ultimate RFC determination – which did not include this limitation – was supported by substantial evidence, the expert's testimony as to this alternative hypothetical claimant is not dispositive.

**DONE** the 1st day of February, 2022.

                                          _____
                                              **ABDUL K. KALLON**
                                    UNITED STATES DISTRICT JUDGE